## CHARLES TATEM AND JAMES CANBY.

*vs.*

## JOSHUA GILPIN AND THOMAS GILPIN.

*New Castle, June T.* 1816.

Practice as to the admission of ex parte affidavits in support of the bill, upon motion for a preliminary injunction.

Affidavits are admissible to support the bill, though it be denied by the answer, in cases where the injunction may be necessary to prevent irreparable mischief.

An order for an injunction *pendente lite* cannot be appealed from, if it be such an order for an injunction as a court of equity, according to its established rules, can issue.

An injunction must be suspensive only, and must not operate so as to alter or affect the pre-existing situation of the parties.   An order for an injunction having the latter effect may be appealed from.

After an appeal prayed and allowed in the Court of Chancery, the cause is out of the Court of Chancery, and cannot be further proceeded in until its return from the Court of Appeal.

INJUNCTION BILL.—The complainants were the owners of a mill site on the South side of the Brandywine Creek, on which they were about to erect a mill, above a mill site owned by the defendants.   The bill charged, among other things, that the defendants had by a new dam constructed across the creek, below the mill site of the complainants, penned the water back upon the complainants to the height of two feet and three quarters of an inch above its usual and proper level, thereby depriving the complainants, of a suffi cient fall of water for their contemplated mill, and prevent ing the erection of it.   The prayer was for an injunction, to restrain the defendants from using or drawing off the water from the dam for the use of their mill, until it should be reduced two feet and three quarters of an inch to its proper level, so as not to interfere with the water rights of the complainants.

The Chancellor refused to order an injunction upon an *ex parte* application, and directed notice to be served upon the defendants, with sufficient time to appear and answer. Accordingly, the defendants appeared and filed their answer.   The answer denied that the defendants had, by their dam, penned the water back upon the complainants' land to the height of two feet and three quarters of an inch, as in the bill was alleged, or that the water was raised above the ordinary and usual level; and the defendants claimed the right to hold and use the dam in its then present condition.   The answer denied at large the equity of the bill.

It is not material to the points decided, to set forth the title of the respective parties, as alleged in the bill and answer respectively.

At the hearing of the motion for a preliminary injunction upon the bill and answer (August 26, 1816), *McLane*, for the complainants, offered to read, in support of the bill, certain affidavits taken *ex parte* before Justices of the Peace, and, upon objection made, he insisted upon the regularity of such a course, on the ground that the application here made was in order to prevent irreparable injury. *Gibbs vs. Cole*, 3 *P. W.* 255. *Isaac vs. Humpage:* 1 *Ves. Jr.* 427 : 3 *Bro. Ch. Rep.* 463. In *Robinson vs. Lord Byron*, 1 *Bro. Ch. Rep.* 588, where the bill was to restrain Lord Byron from letting an unusual quantity of water flow upon the complainant's mill, affidavits were read against the answer. In *Strathmore vs. Bowes*, 2 *Bro. Ch. Rep.* 89, affidavits in a case of waste were read in reply to an answer.

*Broom* and *Read*, for defendants.

It is a general principle that the answer is to be taken as true, and that it cannot be impeached by affidavits—especially when the object is to disprove title. We do not say that the rule is universal; but if this case is an exception, the complainants' counsel must show it.

The complainants have never had any use or enjoyment, but they seek to prevent the enjoyment of a long established property in the defendants. Even treating this as a case of doubtful title, a Court of Chancery will not now interfere by injunction. The right must be first established at law.

RIDGELY, CHANCELLOR.—This is a case which comes within the exceptions to the rule, and in principle is the same as the case of Robinson vs. Lord Byron cited in argument. By the overflowing of the land the complainants

are deprived of the use and enjoyment of it.   They cannot build on it while it is covered with water.   It may possibly go to the irreparable destruction of it.   At any rate, it obstructs all the alleged motives of the complainants in purchasing, by preventing them from building.   Let the affidavits be read.

Before the case had proceeded further the defendants applied for leave to produce counter affidavits ; whereupon, at the Chancellor's suggestion, it was agreed to postpone the hearing, with leave to take affidavits on both sides.

Afterwards, on the 30th August 1816, the motion for an injunction came again before the Chancellor, upon the bill and answer, and upon affidavits exhibited on both sides : whereupon the following order was made, viz : "It is order-" "ed by the Court, that a writ of injunction be issued to" "restrain the defendants, their agents, &c., from damming" "up or penning back the waters of the Brandywine creek," "above the natural or ordinary level of the said creek, at the" "line dividing the land of the complainants from the land" "of the defendants, by the dam lately erected by the de-" "fendants, or by any other obstructions to be made or" "erected, so as to overflow the land of the complainants," "until this Court shall make further order to the con-" "trary."

From the above order an appeal was taken, pending which, at the April Term 1817, the complainants filed an affidavit showing that the defendants had, since the last Term, dammed up the waters of the Brandywine above the natural level of the creek, and had overflown the land of the complainants, contrary to the order of the Chancellor heretofore made ; and thereupon *McLane*, for the complainants, moved for an attachment, notwithstanding that an appeal had been prayed and allowed.   No writ of injunction had as yet been issued.

*McLane* and *Van Dyke*, for the complainants.

The question is whether the appeal suspends the order, made in the cause, for a writ of injunction. That depends upon the construction to be given to Art VII. of the Constitution, touching appeals. (1 Vol. Delaware Laws, p. XLIV, Digest of 1829, p. 27.) Jurisdiction is there given to the High Court of Errors and Appeals, " to receive and deter- " mine appeals from interlocutory or final orders or decrees " of the chancellor." An interlocutory order is one which ascertains some right, or determines some matter or thing, on which the final decree depends,—something essential to the determination of the cause ; such as an order for an account. An injunction is not an interlocutory order within the meaning of the constitution. It decides no fact, fixes no right, and is not at all necessary to the final determination of the cause. It is mere process of the Court, issued to hold *in statu quo* the subject matter upon which the decree is to operate, until the Court shall be enabled to ascertain and adjudge the rights of the parties. It is a process collateral to the suit, and is often issued upon petition before any bill filed. To give to an appeal the effect of suspending orders of this nature would practically annihilate chancery jurisdiction for many of its most important ends ; as, upon an injunction to stay waste or to prevent other irreparable mischief, the defendants would need only to appeal and then utterly destroy the timber, or commit the very mischief which it was the object of the suit to prevent. So, upon a bill to perpetuate testimony, if the order to take the testimony can be suspended by an appeal, the witness may die before his evidence can be secured. So in the case of a writ of *ne exeat regno* : upon taking an appeal the party would be left free to go away and thus defeat the jurisdiction. The security taken upon an appeal affords no adequate remedy for injuries of this nature, but only for cases

of debt or damages. Further, it may be noticed that to hold all proceedings between the commencement of a suit and the final decree subject to be suspended by an appeal would ronder a chancery suit perpetual. The clause of the Constitution giving an appeal must receive such a construction as will preserve and not destroy the necessary powers of a court of equity. The Constitution and laws of this State, (1 Vol. Delaware Laws, 130, Digest of 1829, p. 102-3) defining equity jurisdiction, meant to give the power to award injunctions as it is exercised in England. Under the English practice, an appeal lies only from a final decree, or, from an interlocutory order made for some purpose necessary to a final decree, 3 *Blk. Com.* 454 : 1 *Harrison's Ch. Pr.* 454 : not from orders of this nature. An appeal was disallowed in the case of an order to show cause only. 1 *Brown's P. C.*, 439–40 : so from an order for a commission of lunacy. 1 *Brown's P. C.* 450. In *Young vs. Grundy,* 6 *Cranch* 51, an appeal was held not to lie from an interlocutory order or decree dissolving an injunction. The present is the first attempt in this State to suspend the order for an injunction by appeal. The practice heretofore shows the sense in which the Constitution has been understood.

*Read, Broom* and *Wales,* for the defendants.

Upon two grounds, we insist that the Court cannot now interfere.

1. Whether this be an interlocutory order or common process, is not now to be questioned. The appeal has been allowed and security given. The case is taken from this jurisdiction. If the appeal is irregular, application must be made to the Court above. But,

2. This *is* an interlocutory order. An injunction never issues but by special order of the Court. It is collateral to the cause, and it is interlocutory or it is nothing : and the

Constitution gives an appeal from all interlocutory orders. The right of appeal in this State is constitutional, and different from that to the House of Lords; therefore no decisions in England can control this right. With respect to the case in this country, cited from 6 *Cranch* 51, the laws of the United States forbid an appeal except from final decrees. Hence, that case does not apply here.

RIDGELY, CHANCELLOR.—My only doubt is, as to the power of this Court to act after appeal prayed and allowed. I have no idea that this order is an interlocutory order. It has been frequently intimated to me that appeals would be taken from orders for writs of injunction made at the time of filing bills. I have often considered the subject, and never supposed such an order to be an interlocutory order, from which the party could appeal. An interlocutory order is an order made upon a point whereby some right or principle is established in the cause, on which a final decree depends; or, it determines or directs some matter or thing which is necessary to the making of the final order or decree. Such is an order to account on a bill filed by one partner against another; as in a case from Sussex County, where an appeal was properly taken from such interlocutory order. For the order to account settled the principle; the rest was mere matter of fact and calculation.

This is not an interlocutory order; it is an original process. By an Act of Assembly injunctions to stay waste and suits at law may be awarded and issued *before* the bill is filed. This is in the nature of an injunction to stay waste. It determines nothing; it only saves the complainant from injury until the matter is finally heard and decided.

However, as the appeal has been allowed, the case is out of this Court, and now I cannot proceed in the cause in any manner until it returns from the High Court of Errors and Appeals.

The motion for an attachment is denied.

Appeal—motion to dismiss.

This cause came before the High Court of Errors and Appeals, at the June Term 1817, and the question whether, an appeal lies from an order of the Chancellor directing an injunction to be issued, came before that Court, upon a rule to show cause why the injunction should not be dismissed.

*McLane, Van Dyke* and *Rodney,* for the appellees

*Read,* for the appellants.

The motion to dismiss was very fully argued, but upon no new points, except that on behalf of the appellant the further ground was taken that the Chancellor's order went beyond the purpose of holding the matter *in statu quo ;* that it was retrospective in depriving the defendants of the use of their dam, as it already stood and had long before been enjoyed, and was rather in the nature of an execution than a suspensive order ; that for this reason, in addition to those before urged, an appeal should lie.

JOHNS, CHIEF JUSTICE, announced the following as the conclusions of the Court upon the points argued :

1st, That the words " interlocutory order or decree " in the Constitution must be taken in a technical sense, and that the right of appeal is not enlarged but secured by the Constitution.*

2nd. That an order for an injunction *pendente lite* cannot

---

* This point was decided upon the construction of the Constitution of 1792, which gives the right of appeal '' from interlocutory or final orders or decrees of the Chancellor.'' The Court, in this case, held that these words were to be taken in their technical sense. and that the right of appeal was not enlarged but secured by the Constitution. Under the Constitution of 1831, now in force, the jurisdiction of the Court of Errors and Appeals is to determine " all matters of appeal in the interlocutory or final decrees and proceedings in Chancery.'' This clause has not yet received a judicial construction upon the point raised in the present case.

be appealed from, if it be such an order for an injunction as a court of equity, according to its established rules, can issue.

3rd. But, if in an order for an injunction, the equity jurisdiction, in its direction, which is a part of the order, defines the nature of the injunction to be issued, and if in so doing, though the order is called an order for an injunction, it makes an order for issuing a writ to restrain the respondents from doing an act which a court of equity, by any known, established rules, never attempted to restrain; as, if an ejectment should be brought against A. B. by C. D. for a house which A. B. had been in the possession of more than twenty years, and C. D. should file a bill against A. B. and a court of equity should order an injunction to prevent A. B. from residing in the house, this would be such an order,—such a deciding or affecting the rights of one of the parties,—as ought to be reviewed by this Court ; and an appeal ought to be used and does lie.

4th. The order in the present case is to restrain, alter, or prevent acts done or not to be done ; and it does not describe what is not to be done or to remain, so as to mean anything, unless it is to be understood to refer to the natural or ordinary level of the water at the dividing line, without regard to the right or possession. And that is the great point of controversy in this case,– a something not to be ascertained till the right be decided. The order, if it is to be understood and used as the respondents here avow, is, in the opinion of this Court, an order of such a nature that it is not to be considered simply an order for process of injunction, but is such an act of the Court below as will entitle the appellants to relief by an appeal to this Court.

The Court are of opinion that the rule to show cause be discharged.

The cause then came before the Court upon sundry causes of appeal filed, among which were these :

7th. That if the Chancellor could, upon any principle of equity, have made an order that a writ of injunction should issue upon the bill at the prayer of complainants, " then it could only have issued upon the principle, and so " to operate, as to prevent and enjoin the appellants from " erecting or putting up any further or other obstructions, " and not so as to alter or change the state and condition of " the said dam at the time of exhibiting and filing the said " bill in the Court of Chancery ; wherefore the order is " excepted to."

11th. That the order of the Chancellor directs a writ of injunction to be issued to enjoin and restrain the appellants, their agents, laborers and workmen, from damming up, or penning back the waters of the Brandywine Creek above the natural or ordinary level of the said Creek at the line dividing the land of the said appellants from the land of the said respondents, by the dam lately erected by the said appellants or by any other obstructions to be made or erected, so as to overflow the land of the said respondents, until the Court of Chancery should make further order to the contrary ; whereby the Chancellor not only orders an injunction to issue to enjoin and restrain the said appellants from placing obstructions in the bed and waters of the said Creek, but in effect, by restraining and enjoining the appellants by an injunction to be issued as aforesaid, would authorize and require the removing or reducing so much or such part of the said dam as in its existing condition and structure would be supposed to produce or occasion the damming or penning back the waters of the said Creek as aforesaid,—thereby divesting the appellants of their property and freehold, and so in fact altering the existing state of the said dam at and before the filing of the said bill.

The case was submitted, without argument; and the High Court of Errors and Appeals, upon consideration, sustained the appeal upon the two causes of appeal above stated, and directed the following order to be entered :

" And now, to wit, this 10th of June, 1817, this cause coming on to be heard,—It is thereupon ordered by the Court, that the order for the injunction be modified. And it is further ordered, that a writ of injunction be issued by the Court of Chancery to enjoin and restrain the said Joshua Gilpin and Thomas Gilpin, their agents, workmen and laborers, from damming up or penning back the waters of the Brandywine Creek upon the lands of the said Charles Tatem and James Canby, *which adjoin the lands of the said Joshua Gilpin and Thomas Gilpin,* to a greater extent or in a greater degree than the said Joshua Gilpin and Thomas Gilpin, or those from whom they derive title, *had ordinarily or usually done, or had been in the enjoyment or exercise of, antecedently to the 15th day of July,* 1815, by any erections or obstructions already erected or made, or that may be erected or made, by the said Joshua Gilpin and Thomas Gilpin, so as to overflow as aforesaid the said lands of the said Charles Tatem and James Canby, until the said Court of Chancery make further or other order therein. And it is ordered that the record be remanded to the court below ; and that the costs in this court be equally divided."