HARRIET I. NEWLIN and MARY A. NEWLIN,

*vs.*

KATIE C. PHILLIPS, Executrix of EMMA A. NEWLIN, deceased, and THE PENN SYNDICATE, Guardian of AMY EUGENIA CLARK.

*New Castle, April 5, 1911.*

A court of equity will remove a cloud upon the title to land.

N. by will gave to his wife a life estate in all his property and at her death to his sisters then living. There were two sisters, H. and M. The widow as executrix of N. foreclosed a mortgage held by her husband and through an intermediary, W., took title to the mortgaged premises and died seized thereof. By her will the widow gave to H. and M. all the estate and property which she received from her husband, and the residue to A. H. and M. sought to remove the cloud on their title. *Held*, that as H. and M. must prove *aliunde* the record that the deed to her from W. was only as a conduit and that the land took the place of the mortgage thereon, and so was property received from her husband, it was a cloud on their title, inasmuch as A. was apparently the devisee of the land as property of the widow, and a court of equity will remove such cloud.

Where there are several defendants, and one demurs and the other answers, the one demurring cannot appeal from an order overruling his demurrer, thereby splitting the cause of action.

*Harry Emmons*, for the complainants.

*William T. Lynam*, for the defendant, Katie C. Phillips, Executrix of Emma A. Newlin, deceased, did not participate in the argument.

*Robert Adair*, for the defendant, The Penn Syndicate Guardian of Amy Eugenia Clark.

THE CHANCELLOR: James B. Newlin, by will, gave all his property to his wife, Emma Alice Newlin, desiring her to carefully husband it so as that the income therefrom should give her a comfortable livelihood for the remainder of her life, and desired that at her death such as might then be remaining be equally divided between the brothers and sisters of the tes-

tator then living. After his death in 1896 his widow, Emma Alice Newlin, became his executrix, and at the death of the widow in 1904, there were living two sisters of James B. Newlin, the complainants, but no brothers. At the time of his death, James B. Newlin held a mortgage for $1,650, made by Louis M. Sawdon, on real estate in Wilmington, and in 1901 Emma Alice Newlin, executrix, foreclosed the mortgage. The land was sold and conveyed to one Williams, who, by deed dated the same day as the deed from the Sheriff, conveyed the land to Emma Alice Newlin, and she continued to hold the title to the time of her death. By her will, Emma Alice Newlin gave Harriet I. and Mary A. Newlin, the complainants, sisters of her husband, all the estate and property which she received from her husband, and by a codicil gave all the residue of her estate to Amy Eugenia Clark, the defendant.

By the bill it is alleged that Williams, the grantee in the Sheriff's deed above mentioned, became such only as a conduit for the title to Emma Alice Newlin, and was only nominally the purchaser at the Sheriff's sale; that the real estate took the place of the mortgage and represented a part of the assets, which had been received by Emma Alice Newlin from her husband; that the costs of the foreclosure suit and taxes on the mortgaged premises were paid by the estate of James B. Newlin, aggregating $201.83, which was the only money paid for the land. Possession of the real estate was held and enjoyed by Emma Alice Newlin until her death in 1904, and has been held and enjoyed by the complainants since that time. It is claimed that there is a cloud on the title and the bill is filed to remove it. The cloud is this: On the record, Emma Alice Newlin was the owner of the land by purchase and deed from Williams, and as it did not appear of record that she had received it from her husband, it apparently passed under the general residuary devise of her will to Amy Eugenia Clark and not to the complainants, the latter being devisees of that property only which Emma Alice Newlin received from her husband; but that notwithstanding this apparent title, it was a matter of proof *aliunde* the record that the mortgaged premises were substituted for the mortgage held by James B. Newlin; and the money used

to buy in the mortgaged premises through the medium of an intermediate purchaser, Williams, was part of the estate of James B. Newlin; and as it had been heretofore held by Chancellor Nicholson, in another proceeding had for the construction of the will, that Emma Alice Newlin took only a life estate and had no power of disposition by will of property of her husband, the mortgaged premises continued to be in fact part of his estate, and passed as his property to his devisees in remainder, the complainants, and not to Amy Eugenia Clark, under the will of Emma Alice Newlin, as property of Emma Alice Newlin, the apparent owner therof.

The defendant, The Penn Syndicate, Guardian as aforesaid, has demurred generally to the bill, and relied on a want of jurisdiction and lack of equity. But taking all the allegations of the bill to be true for the purpose of the argument, my conclusion is that the land being substituted for the mortgage thereon, and being purchased by moneys of the estate of James B. Newlin, was subject to the terms of his will, whether it be regarded as real estate, or, as in legal effect, personalty, as was the mortgage which he held, and that his wife took under his will only a life estate with remainder to the complainants. By the bill it sufficiently appears that to establish their title, facts *aliunde* the record must be shown in order that when attacked the complainants could properly defend their title. This outstanding claim of Amy Eugenia Clark, if valid, would impair the title of the complainants, and on its face has that effect, but by extrinsic evidence it can be proved an invalid claim. Such a state of facts constitutes a "cloud".

The jurisdiction of a court of equity to remove clouds on titles is too well established to be discussed. Equity interferes to remove clouds upon title because they embarrass the owner of the property clouded and tend to impede his free sale and disposition of it. Suppose Amy Eugenia Clark should bring ejectment against the complainants, based on the deed from Williams to Emma Alice Newlin, and the will of the latter, whereby she devised all her estate other than that which she received from her husband to Amy Eugenia Clark, would not the complainants be obliged to offer in evidence the fact that

the land was substituted for the mortgage, and was bought with money of the estate of James B. Newlin, and the other facts to show the connection between the estate of James B. Newlin and the land? If so, then the deed to Williams and the will of Emma Alice Newlin constitute a cloud which equity will remove. It is clear that the above query is to be answered affirmatively, and it follows that there is a cloud to be removed, provided the allegations of the bill are sustained by proper proof.

The demurrer is overruled and order for answer.

PETITION FOR ALLOWANCE OF AN APPEAL FROM AN ORDER OVERRULING A DEMURRER. On May 1st, 1911, The Penn Syndicate, Guardian of Amy Eugenia Clark, one of the defendants, filed a petition praying the allowance of an appeal from an order entered in conformity with the foregoing opinion overruling the demurrer.

*Robert Adair*, for the petitioner, relied on the general right of every person to an appeal.

*Harry Emmons*, for the complainants. The Constitution of the State of Delaware provides that the Supreme Court shall have jurisdiction "to receive appeals from the Court of Chancery, and to determine finally all matters of appeal in the interlocutory or final decrees and proceedings in chancery." The order overruling the demurrer cannot be considered an interlocutory or final decree. *Tatem, et al. v. Gilpin, et al.,* 1 *Del. Ch.* 13; *Thompson v. Thompson,* 6 *Houst.* 225; *Barksdale v. Butler,* 74 *Tenn.* 450. An appeal will not lie unless there has been a final disposition of the case as to the parties. *Meagher v. Minn. Thresher Mfg. Co.,* 145 *U. S.* 608; *Gulf City, &c., Co. v. Becker,* 23 *S. W. (Texas)* 1015; *People v. McFarlan,* 3 *Ill. App.* 237; *Hunter v. Gardenhire,* 78 *Tenn.* 87. An order overruling a demurrer is not appealable. *Morrison v. Bernot,* 108 *Pac.* 772.

THE CHANCELLOR: It is quite clear that this defendant is not entitled at this time to an appeal, and it is manifestly unwise that she should be allowed it, and two reasons may be urged against it: First, that an appeal will not lie in equity

from an order overruling a demurrer, even where there is a single defendant. And secondly, where there is more than one defendant, and one defendant answers and the other demurs and the demurrer is overruled, the cause cannot be split up, one defendant going to the appellate court and the other defendant continuing in the Court of Chancery. I doubt seriously whether the order overruling a demurrer in equity is an interlocutory decree, or such an order as is appealable. By the *Constitution of Delaware* (*Article* 4, § 12) the Supreme Court has jurisdiction "to receive appeals from the Court of Chancery and to determine finally all matters of appeal in the interlocutory or final decrees and proceedings in chancery." This is almost identically the language of the *Constitution* of 1831 (*Article* 6, § 7). By the earlier *Constitution* of 1792 (*Article* 7, § 1) the jurisdiction was conferred by wider language, viz., "to receive and determine appeals from interlocutory or final orders or decrees of the Chancellor." This latter provision was construed in *Tatem v. Gilpin*, 1 *Del. Ch.* 13, and it was declared that the words "interlocutory order or decree" must be taken in a literal sense and that the right of appeal was not enlarged but secured by the Constitution. Therefore, a preliminary injunction which was more than suspensive in its effect, was held in the case cited to be appealable, whereas a preliminary injunction suspensive only would not have been. In a note to the case the learned reporter, Chancellor Bates, called attention to the fact that the Constitution of 1831 was different, and had not then been construed, nor has it yet been construed. The general rule is that only final decrees are appealable (*Meagher v. Minnesota, etc., Co.*, 145 *U. S.* 608; *Hohorst v. Hamburg, etc., Co.*, 148 *U. S.* 262), and an order overruling a demurrer is certainly not such. It is doubtful if it is even an interlocutory order in a technical sense, for, as Professor *Langdell* in his valuable summary of *Equity Pleading*, page 105, says:

"A decision on a demurrer is never followed by a decree, but simply by an order, allowing or overruling the demurrer, as the case may be."

And again:

"The demurrer in equity does not admit the truth of the bill; it merely assumes its truth for the sake of the argument. If it be overruled,

therefore, it does not follow that the plaintiff is entitled to a decree; for he must first prove his bill. A defendant, therefore, whose demurrer has been overruled, not only may, but must, answer the bill; and by his answer he may avail himself of every defense just as if no demurrer had been interposed." See, also, 1 *Daniel's Chancery Pleading and Practice*, 600.

Such an order is one concerning pleadings, decides nothing except that the defendant must answer, and he can make the same defense by answer. It may be that such an order will be held to be not appealable in Delaware. *Barksdale v. Butler*, 6 *Lea* (74 *Tenn.*) 450. In *Chappel v. Funk*, 57 *Md.* 465, the dissenting opinion of Judge Alvey presents this view very strongly. In Delaware an order overruling a demurrer to a plea to a declaration in a suit at law was not the subject of a writ of error. *Norfolk Lumber Co. v. Simmons*, 2 *Marv.* 317, 43 *Atl.* 163. Furthermore, by statute in Delaware, "an omission to claim or prosecute an appeal from an interlocutory decree or order as aforesaid shall not debar a party from making any objection to such decree or order upon an appeal from the final decree." But on this branch of the case I do not express a definite opinion, indicating only the present inclination of my mind, and base my refusal to allow the appeal on the second ground.

An order overruling a demurrer taken by one of two defendants and ordering the demurring defendants to answer is surely not appealable. *Barksdale v. Butler*, 6 *Lea* (74 *Tenn.*) 450; *Frow v. De la Vega*, 15 *Wall.* 552, 554. The reason against allowing an appeal under such circumstances is quite obvious and is well stated in *Barksdale v. Butler*, *supra*:

"Such a practice would lead to a multitude of appeals, coming up at various times, in the same case, involving the same question, leaving the cause to progress in the Court below without having the necessary parties before the Court, and requiring the depositions of the same witnesses, it may be, to be taken several times."

In *Frow v. De la Vega*, *supra*, there were several defendants, and one made default, and as to him a decree *pro confesso* was taken, to which he took an appeal; but it was disallowed by the Supreme Court because it was not a final decree and such could not be entered until it was entered as to all the parties, including the defendant in default.

This proposition is thus stated in 2 *Cyc.* 588:

"An appeal or writ of error will not lie as a rule, unless there be a final disposition of the case as to all the parties."

And cases from many states are cited to support this, which it is not necessary to review.

I am also clear that the executrix of Emma A. Newlin is not surely a formal party but a proper party, who under a certain view that may be taken of the case when finally heard, the estate of Emma A. Newlin may be vitally interested. Whether she is a necesssary or proper party is not now before me, so as to call for a decision of the question.

For the reason, then, that the order from which an appeal is prayed is not against all the parties, I decline to allow the appeal.

In order, however, not to preclude the defendant, Amy Eugenia Clark, from making her defense by answer, I will, on an application promptly made by the solicitor for her guardian, extend the time for answering, though the defendant by not answering within the time fixed by the rules of court is in default and a decree *pro confesso* against her might be asked for by the complainant.

Let an order be entered accordingly.