CONSOLIDATED FISHERIES COMPANY, a corporation of the State of Delaware, and THOMAS H. HAYES, an individual, and RICHARD C. HAYES, an individual,

Appellants,

*vs.*

CONSOLIDATED SOLUBLES COMPANY, a corporation of the State of Delaware, and DAVID LEVIN, an individual,

Appellees.

*Supreme Court, On Appeal, September 18, 1953.*

SOUTHERLAND, Chief Justice, WOLCOTT, Justice, and HERRMANN, Judge, sitting.

*John Van Brunt, Jr.,* of Killoran & Van Brunt, of Wilmington, for appellants.

*Samuel R. Russell,* of Tunnell & Tunnell, of Georgetown, for appellees.

SOUTHERLAND, Chief Justice.

The essential question presented is whether an order of the Vice Chancellor granting a preliminary injunction in the cause below is an appealable one. The facts are these:

On April 6, 1951, Consolidated Fisheries Company, a Delaware corporation, made a contract with David Levin and Consolidated Solubles Company, a Delaware corporation, for the erection and operation of a plant for the manufacture of a product known as "condensed fish stickwater". (The parties will be referred to as "Fisheries", "Levin" and "Solubles", respectively.) Fisheries is engaged in the processing of oils and other substances from fish. A by-product from this process containing certain residual solids is known as "weak stickwater", and from this by-product may be recovered, by a process of evaporation, another product higher in solid content—the "condensed stickwater"—which is salable to the poultry industry.

The plant is owned by Solubles, though erected on land leased by Fisheries from the Commissioners of Lewes. Fisheries is to supply the "weak stickwater" to the Solubles plant, and also to furnish all of the labor, power, supplies and supervision necessary to operate the plant. Fisheries is to supply all services in connection with the sale of the product. Net profits are to be divided between Fisheries and Solubles in the ratio 60% to 40%.

Paragraphs 5 and 6 of the contract provide:

"5. Solubles will pay Fisheries for all power, oil, supplies and labor furnished by Fisheries in the operation of the fish 'stickwater' plant the cost thereof to Fisheries. On all sales made by Fisheries of Solubles, Fisheries shall be paid commissions at the rate of 2% on the net prices received for the condensed 'stickwater'.

"6. All sales made of condensed 'stickwater' processed in the plant of Solubles shall be billed and charged by Solubles, and all receipts on such sales shall be deposited in the account maintained by Solubles. All payments due from Solubles to Fisheries for power, oil, supplies and labor shall be made on the tenth of the following calendar month in which the supplies and labor have been furnished."

The plant was built and has been in operation since sometime in 1951. The business is a seasonal one, operating from about June 1 to October 1 of each year. Sales of "stickwater" were made by Fisheries during 1951 and 1952, but were made in its own name and the proceeds of the sales were retained by it. In January, 1952, and on other occasions, Solubles protested against this disregard of the contract provisions, but the practice was continued.

Disputes having arisen over the cost of the plant and other matters, Solubles and Levin on December 11, 1952, filed suit in the court below against Fisheries and two individuals, alleging breaches of the contract by Fisheries and failure to account in respect of sales made and moneys received. Solubles seeks an accounting, specific performance of the contract, and other relief.

After the trial of the accounting issue, Solubles on June 15, 1953, moved for a preliminary injunction restraining Fisheries from any breach of the agreement and particularly from any breach of the provisions of paragraph 6 (quoted above). This motion was supported by an affidavit of Levin. This affidavit averred that Fisheries had during the years 1951 and 1952 made sales of large quantities of "stickwater" in its own name and had appropriated to itself all of the proceeds (excepting one item of $71.19); that Solubles had repeatedly protested against this practice; that Fisheries nevertheless intended to continue it; that the business of Solubles was a seasonal one, operating from about June 1 to October 1 of each year; and that such continued breaches of the contract would inflict upon Solubles irreparable injury, for which it had no adequate remedy at law. No answering affidavit was filed.

On July 7, the Vice Chancellor filed an opinion holding that Solubles was entitled to an injunction restraining Fisheries from selling Solubles' products in its own name and from refusing to deposit the proceeds of sales in Solubles' account. Observing that the contract was still in full force and effect, and its validity undisputed, the Vice Chancellor considered Fisheries' contention that Solubles was indebted to it, and held such indebtedness, if it existed, to be no justification for Fisheries' continued violation of the contract provisions. On motion for reargument he adhered to this conclusion. On July 21, 1953, he entered an order, effective as of July 7, 1953, enjoining Fisheries from selling the product produced in Solubles' plant "other than as the agent for and in the name of Consolidated Solubles Company and from applying all receipts from the sales of said product other than to the bank account maintained by Consolidated Solubles Company", as provided in the contract.

From this order Fisheries has appealed. Solubles moves to dismiss on the ground that the order is not an appealable interlocutory order within *Art. IV, Section* 11(4) of our constitution. *Del.C.Ann.*

The principles governing the appealability of interlocutory orders in Chancery are well settled by our decisions. See *Tatem v. Gilpin,* 1 *Del.Ch.* 13; *Tebo v. Hazel, (Del.Ch.),* 74 *A.* 841; *Electrical*

*Research Products, Inc. v. Vitaphone Corp.,* 20 *Del.Ch.* 417, 171 *A.* 738; *Consolidated Film Industries, Inc. v. Johnson,* 21 *Del.Ch.* 417, 192 *A.* 603; *Du Pont v. Du Pont,* 32 *Del.Ch.* —, 82 *A.2d* 376; *Martin v. American Potash, etc., Corp.,* 33 *Del.Ch.* —, 92 *A.2d* 295. An order determining real or substantive rights is appealable; but a preliminary order designed merely to prevent threatened injury and to preserve the *status quo* pending final determination of the cause is not appealable except in the rare case of abuse of discretion.

We are of opinion that the order of July 21 is of the latter kind. Fisheries' conduct was a clear violation of its contract, and an obvious injury to Solubles, which was not only deprived of funds which were its property, but was also prevented from acquiring any good will that might flow from conducting the business under its own name. To permit the continuance of the wrong might seriously prejudice Solubles' rights; to enjoin it would not inflict hardship upon Fisheries. If Fisheries chooses to continue to make sales as Solubles' agent, it can claim no injury from being required to do only that which it has agreed to do. This aspect of the matter is especially persuasive, because Fisheries' rights in respect of payments due from Solubles under paragraph 5 of the contract are protected, the continued effect of the injunction being conditioned upon Solubles' making such payments.

The order is essentially one for the temporary protection of property rights pending final determination of the controversy. See *Elliot v. Jones,* 11 *Del.Ch.* 343, 101 *A.* 874, and *Cramer v. Lewes Sand Co.,* 15 *Del.Ch.* 329, 138 *A.* 78. Hence it is interlocutory in the strict sense, that is, it affords plaintiff temporary protection pending the final outcome of the suit, and, as we shall hereafter show, it determines nothing finally against defendant.

Against this conclusion Fisheries advances two contentions: (1) that the order, though negative in form, is mandatory in effect, and changes—not preserves—the status quo ante; and (2) that the order is a determination on the merits of a substantive question of law, that is, a determination that Solubles is entitled to a decree specifically enforcing the provisions of the contract.

(1) Fisheries' argument in support of its first contention proceeds as follows: Solubles is (or was) indebted to Fisheries in a substantial amount; Fisheries had an agent's lien for sums advanced by it for working capital and for sums due to it as sales commissions and profits; and the effect of the order is to require it to relinquish its lien, and thus in effect to compel the delivery of property from one litigant to another *pendente lite*. Moreover, Fisheries argues, the status quo at the time of the filing of the complaint was not that contemplated by the contract, since neither party had adhered to the provisions of paragraph 6 of the contract.

Now, it is difficult to see how an agent's lien could arise by reason of Fisheries' obligation to advance working capital or its right to receive profits. But it is sufficient to say that there can be no agent's lien if the agent has undertaken to perform duties inconsistent with the existence of the lien. *Restatement, Agency,* § 464, *comment (b)*. Here Fisheries, as sales agent, has specifically agreed that all proceeds of sales shall be deposited in the principal's account. And it is not easy to see how any funds could come into Fisheries' possession unless it violated the requirement to sell in its principal's name. Thus the basis of Fisheries' lien claim is its own violation of the contract— a position not likely to find support in the law.

The argument that the order changed the status quo ante because "neither party" had adhered to the contract seems to reduce to a contention of fact, i.e., that the provisions of paragraph 6 had been tacitly modified by the conduct of the parties. Nothing in the record supports this assertion; the only evidence before us (the Levin affidavit) contradicts it. Defendant points to some testimony to the effect that Solubles agreed that Fisheries should reimburse itself from sales for plant costs; but this has nothing to do with the situation existing when the injunction was issued. It is also to be said that the order is prospective only; it does not require Fisheries to pay over any funds collected prior to July 7. Hence it does not take property from one litigant and give it to another *pendente lite*. We think Fisheries' first contention is without merit.

(2) Fisheries' second contention is that the injunctive order of July 21 is in effect an order specifically enforcing the provisions of

paragraph 6 of the contract of April 6, 1951, and, by necessary implication, all of the other "principal provisions" as well; that the contract is not one which will be specifically enforced in equity, because it is too uncertain and because specific enforcement would entail continuous supervision by the court; and that the order therefore determined substantial rights adversely to Fisheries.

The heart of this argument is Fisheries' contention that the injunction, though limited in form to the provisions of paragraph 6 of the contract, necessarily requires Fisheries to perform all of the "principal provisions" of the contract. Though it is not developed in the brief, we understand Fisheries' contention to be that the injunction not only restrains Fisheries from selling the Solubles' product in Fisheries' name, but by necessary implication directs Fisheries to make such sales, and also to comply with the contract requirements for the supply of "weak stickwater", labor, power, etc., contained in paragraphs 3 and 4 of the contract. If it refuses to make sales of stickwater, says Fisheries, it will be in contempt of court.

The answer to this contention is that the injunctive order does not deal with or imply anything as to any provisions of the contract except those of paragraph 6. Fisheries is not compelled to make any sales; all the injunction does is to require Fisheries, if it chooses to sell, to abide by the contract in making the sale and dealing with the proceeds. The scope of the order is to be determined by its language, which is not susceptible of the interpretation sought here to be placed upon it.

Nor does the order determine any substantial rights of either party. Assuming that an injunctive order restraining a violation of a contract is, to a limited extent, the specific enforcement of the contract, yet the granting of such a preliminary injunction is not necessarily a final determination that similar relief will be given in the final judgment. The final relief is to be determined by the court below after a consideration of the entire case. Fisheries is at liberty to argue below, as it attempts to argue here, that for the purpose of final relief the contract is not specifically enforceable in any respect. That issue the court below has not reached, and Fisheries' argument here is accordingly premature.

■ Fisheries advances a subsidiary argument to the effect that Solubles had breached the contract of April 6, 1951, by failing to pay Fisheries for the labor and supplies furnished by the latter, and in fact is without funds to meet these and other obligations; wherefore, says Fisheries, the funds of Solubles should be allowed to accumulate in Fisheries' hands. It is a strange argument to advance. Out of $118,191.82 collected by Fisheries for Solubles from the sales of the product, Solubles received $71.19. Solubles' inability to pay resulted from Fisheries' refusal to comply with the contract. Again, Fisheries seeks to turn its own default to its own benefit. The argument is without merit.

We have examined the legal grounds advanced to support Fisheries' contention that the order of July 21, 1953, is appealable, and have rejected them. No abuse of discretion having been charged, it follows that the appeal must be dismissed.