W., J., & B. BRADWELL, *infants*, (*by their guardian and next friend,*) *against* WEEKS.

*Infants* cannot, by their *solicitor* or *counsel*, petition the court to be relieved from the necessity of depositing the sum required by the rules of court, on entering their *appeal* from a decree ; but must, as in all other cases, appear by their *guardian* or *next friend*.

The 37*th Rule* of this court, made *June* 7th, 1806, requiring the party appealing from a decree or order of this court, to deposit 100 dollars with the register or assistant register, to answer for costs, &c., is an equitable and salutary rule, intended to prevent delay and abuse.

PETITION of the three infant plaintiffs, with their names subscribed by *A. Burr*, their solicitor and counsel, stating, that on the 31st of *May*, 1814, they exhibited their bill, claiming the whole personal estate of *John Bradwell*, their deceased uncle ; that, " by the decree of this court, one third of the personal estate was directed to be paid to certain persons who were of kin to the deceased, but subjects of *Great Britain*, and resident in *England*;" that they deem the decree to be erroneous, and wish to enter their appeal ; but that, by the rules of this court, they are required first to deposit with the register the sum of 100 dollars ; that the plaintiffs cannot command that sum ; and, as the appeal will not occasion delay, they prayed leave to appeal without making such deposit. (Vide S. C., and the decree of the court, *ante*, p. 206.)

*Burr*, for the plaintiffs.

*Riggs*, contra.

THE CHANCELLOR. The objections to the motion appear to be well taken.

(1.) The plaintiffs, being infants, cannot act by solicitor in this instance more than in the other proceedings in the suit. The suit was commenced and conducted for them by their guardian and next friend, and no reason appears why the guardian is dropped in this application. It is against the course and order of the court, and not conducive to the security of the rights of the parties. The infants should act under the advice and discretion of their guardian or next friend, and the opposite party has, in such case, a responsible person for costs.

The decree is inaccurately stated in the petition, but as a true copy was annexed, the mistake was capable of correction.

(2.) As a new petition, in the name of the guardian, might hereafter be preferred, it will be convenient to the parties that I should now consider the fitness of the application upon its merits.

The 37th rule of the 7th of *June*, 1806, requires that the party appealing from a decree or order of this court, should deposit 100 dollars with the register or assistant register, to answer the costs, if he shall not prosecute the appeal with effect; and, in default, "proceedings shall thereupon be had, as if such appeal had not been made."

If this be a rule just and reasonable in itself, and one which the court had authority to make, I see no sufficient reason for dispensing with it in this particular case. The practice of the court ought to be settled and uniform.

The object of the rule was to prevent the abuse of suing out appeals for the mere purpose of delay, without any *bona fide* intent of prosecuting them to effect, by subjecting the party, at all events, to the payment of the costs, which his appeal necessarily produces. The practice with us is to lodge the appeal in the register's office, and the court above is not considered as possessed of the jurisdiction of the cause, until the petition of appeal has been presented to them, and which cannot be until they are in session. Without this

deposit, a cause might be delayed in this court during the whole vacation of the court of errors, (which is generally from *April* to *February*,) and the appeal be then abandoned without any means of affording indemnity for the costs in the mean time accrued. The court above cannot award costs unless they are possessed of the cause, and that cannot be until the petition of appeal is presented to that court, and filed. If an appeal, then, be lodged in the register's office, according to our practice, and, perhaps, soon after the adjournment of the court for the correction of errors, it must rest in the discretion of this court to determine, in the first instance, whether that appeal shall be a stay of proceedings. The most intolerable abuse would otherwise arise under the practice of appeals ; for, as Lord *Eldon* observed, if a petition, even to stay proceedings in a cause, were refused, the party would have nothing to do but to appeal from that order, and thus carry his point. There must, then, as I had occasion lately to consider in the case of *Green* v. *Winter*,[*] be a power and a discretion in the Chancellor, as there is, on error, in a court of law, (*Entwistle* v. *Shepherd*, 2 *Term Rep*. 78. *Kempland* v. *Macauley*, 4 *Term Rep*. 436.,) to determine, in the first instance, upon the operation of the appeal, and to what extent, and upon what points, it shall stay proceedings. The object of the rule was to prevent the abuse of lodging an appeal in the register's office, and delaying the cause, and putting the officer to the expense of making out the requisite transcripts, and the opposite party to the expense of preparing to meet the appeal, and then abandoning the appeal before it had ever been duly presented to the court above, by which means that court could not award costs. After the court above has become possessed of the cause, so as to do justice between the parties, by preventing delay and awarding costs, the necessity of the deposit ceases.

The object of the rule is not to restrain appeals, (for this court does not pretend to any such power,) but *merely to*

*1814.*

BRADWELL
v.
WEEKS.

[*] *Ante*, p. 77.

*prevent a stay of proceedings without the deposit;* and, in this view, it is a just and salutary rule, and within the ordinary powers of the court.

I have conversed with my predecessor, who made the rule of 1806, and he gives the view of it which I have stated; he says he found a similar rule existing when he came into this court, which was made by Chancellor *Livingston* in the early history of the court. After such a sanction and usage, it would not be becoming in me to reject the rule at once, as unfit and illegal. I ought to be taught its inconvenience by experience, or become persuaded, upon the fullest consideration, of its illegality.

The practice of requiring deposits of money to meet costs, is common in the *English* chancery. A rehearing will not be granted without a deposit of 20*l.*, (*Cur. Can.* 343. *Wyatt's P. R.* 369.,) nor a bill of review without a deposit of 50*l.* ; (*Gilbert's Forum Romanum*, 186. ;) and yet a rehearing and a review are remedies to which the party aggrieved has as perfect a right as he has to an appeal. The statute organizing the court of errors, and which grants the appeal, is not to be construed so strictly as to preclude all checks upon the abuse of appeals; for, to prevent the *abuse* is in furtherance of the due exercise of the *right.* The statute is as much binding upon the court above, as upon this court, and if it renders the rule of this court illegal, it would equally prohibit any similar rule in the court above ; and yet I presume it will hardly be contended that the court above has not competent power to regulate the practice on appeals, and to require of the appellant even security for costs on filing his appeal. In the *English* house of lords, there is a standing rule of the 26th of *January*, 1710, that the appellant shall, in 8 days after the appeal is received, give security, by recognizance in 200*l.*, to pay costs, if the decree be affirmed ; and I have no doubt that the court for the correction of errors, in this state, is competent to make a similar rule. It has always been supposed that it had authori-

ty, as a necessary incident to its jurisdiction, to render its practice conformable to that of the house of lords in *England,* when sitting as a court of appeal ; and such was the declared sense of the court, by its 6th rule, of *February,* 1786.

Upon the whole, it appears to me that the rule in question is fit and proper to prevent the abuse of appeals, by suing them out merely to gain time, and avoid costs ; and that it ought to continue until this court is better advised of its unfitness, or until the court above shall have made some other or further rule on the subject.

Motion denied.