MESSONIER *against* KAUMAN.

*October* 16.    An *appeal* is only a stay of the proceedings in the first instance, and the party
in whose favour the decree is, may *with leave of the court,* proceed, not-
withstanding the appeal: and, on motion for that purpose, the court, after an
appeal filed, ordered a reference to a master to ascertain the precise sum
due by the defendant, with interest; and that the defendant bring the amount
into court within 30 days after confirmation of the report, or that he gives
security to be approved of by a master, to perform the decree, or such de-
cree as might be awarded against him on the appeal, or that execution issue,
notwithstanding the appeal.

AN appeal to the court for the trial of impeachments
and the correction of errors, from the decree lately pro-
nounced in this case, (*a*) having been filed.

*T. A. Emmet,* for the plaintiff, now moved for leave to
complete the decree, by a reference to a master to ascer-
tain the precise sum due, by computing the interest on the
amount decreed to be paid; and that the defendant be di-
rected to bring the sum reported into court, within 30 days
from the confirmation of the report, to be invested in pub-
lic stock for the benefit of whom it may eventually con-
cern; or that the defendant, within that time, give security
to be approved by a master, to perform the decree afore-
said, or the decree that shall be awarded against the de-
fendant upon appeal, or that execution issue notwithstand-
ing the appeal.

*Harison,* contra.

THE CHANCELLOR.    It is very just and reasonable that
the motion should be granted.    The decree, in this case,
is for a large sum of money due to the plaintiff; and as the
defendant is not held to bail in this court, and as the de-
cree is not like a judgment at law, a *lien* on hand until

(*a*) Vide S. C. *ante* page 3

seizure, it is necessary, and is loudly demanded by justice, that the plaintiff should have some security for his demand, pending the appeal. It appeared, from the pleadings and proofs, that the defendant was himself a foreigner; a more reasonable case for security cannot well be conceived. There is nothing, at present, to hinder the defendant from withdrawing himself and his property from the reach of the process of the court. If the court has any power, at all, in the case, it is indispensable that it should now exercise it. The case is within the reason of the statute, which requires security on writs of error from judgments in personal actions at law, in order to render the writ of error a *supersedeas* to an execution. It is probable that this cause cannot be brought to a decision in the court of appeals during the next session, and the plaintiff's debt may be exposed to much jeopardy, and, probably, to total loss, by the delay. If after great persevering and expensive efforts to obtain justice, a decree can be baffled, and the defendant escape, in this way, it may be truly said of a successful plaintiff, *tu victrix ploras.*

In *England*, an appeal to the house of lords is no stay of proceedings in chancery, or of execution, without the special order of the chancellor; and such an order, we may be assured, would never be granted in a case like this, until the sum recovered was placed in a state of security. Thus, in *Willan* v. *Willan*, (16 *Vesey*, 216.) on motion to stay proceedings until the appeal should be heard, the party offered to bring the money into court, to be laid out for the party who should be ultimately entitled; and the same course had been pursued in other cases. In *Monkhouse* v. *Corporation of Bedford*, (17 *Vesey*, 380.) on a decree by a mortgagee, the court refused to suspend execution pending an appeal, unless the money was brought into court, and the interest and costs paid to the plaintiff, on his undertaking to refund, if the decree should be reversed. So, also, in the case of *Way* v. *Foy*, (18 *Vesey*, 452.) the chan-

cellor allowed the plaintiff to take a legacy decreed to him, notwithstanding the defendant had appealed, on his giving approved security to refund, if the decree should be reversed.

There is no doubt, therefore, that the effect of such a motion as the present one would be a matter of course in the *English* chancery, before the appeal could be allowed to operate as a *supersedeas*. I see no reason, nor any objection, against the possession and exercise of equal power in this court. In *Green v. Winter*, (1 *Johns. Ch. Rep.* 77.) the question was discussed, and considered; and I concluded that it rested in the discretion of this court to determine when, and how far, a party might have liberty to proceed, notwithstanding an appeal. The same point was raised, and the same conclusion drawn, in *Bradwell v. Weeks*. (1 *Johns. Ch. Rep.* 325.) I observed, in those cases, that it was well understood and established in the courts at law, (2 *Term Rep.* 78. 4 *Term Rep.* 436., and the cases cited in the notes,) that it rested in the discretion of those courts to determine when a writ of error was a *supersedeas*. The statute requiring bail on writs of error (which was copied from the statutes of 3 *Jac.* I. and 16 and 17 *Ch.* II.) only went to declare, that without bail in the given cases, a writ of error *should not* be a *supersedeas*, and it left the discretion of the courts, as to when error *should* be a *supersedeas*, unimpaired.

By an order of the *English* house of lords, of 1807, (15 *Vesey*, 184.) it was declared that, "for a very long course of years," courts of equity had been in the habitual practice of proceeding, notwithstanding appeals; and that, "according to the present practice of the house of lords," appeals do not stay proceedings, without an order of the court of equity for that purpose, or a special order of the house of lords. The resolution of the house of lords further adds, that "such a practice cannot be departed from, without introducing consequences the most oppressive to

the suitors in courts of equity, and the utmost inconvenience in the administration of justice in such courts."

This practice of the house of lords was declared to be founded on a very long course of years; and, indeed, as early as 1697, we find in the case of *Horner* v. *Popham*, (*Colle's P. C.* 1.) an instance in which the court of chancery proceeded in a cause pending an appeal, and this instance was, in that case made known to the house of lords. In *February*, 1786, the court of this state, *for the trial of impeachments and the correction of errors*, declared, by a general rule, "that on appeals, the practice of the court shall be conformable to that of the house of lords in *England*, when sitting as a court of appeal, until further order."

Motion granted.