1817.

RIGGS
v.
MURRAY.

---

### RIGGS and others *against* J. B. MURRAY.

*December* 8.

This court, notwithstanding an appeal filed in the cause, may in its discretion, award execution for the sum decreed to be paid by the defendant, unless he brings the amount, with the costs, into court, within a certain time given for that purpose, to abide the event of the appeal, &c. or give security, to the satisfaction of a master, to pay the amount of the principal, interest and costs, on the affirmance of the decree, or such part thereof, as may be payable on the decree of the court above, on the appeal.

THE petition of the plaintiff stated the decree in, this cause, (*vide* vol. 2. p. 565.) of the 30th of *September* last, by which the defendant was decreed to pay to the plaintiffs 81,836 dollars, 37 cents, with interest and costs. That on the 17th of *October* last, the defendant filed an appeal from that decree to the Court for the Correction of Errors, &c. That the costs have not been taxed; and that the sum decreed with interest, amounts to 89,000 dollars, exclusive of costs, and for which the plaintiffs have no security. That the plaintiffs apprehend that the cause cannot be brought to a hearing at the next sessions of the Court of Errors, in which case, a delay for more than a year will take place, during which time, the plaintiffs "apprehend the occurrence of circumstances by which the whole, or the greater part of the sum decreed to the plaintiffs, will

be lost to them and the creditors for whom they are as-
signees in trust, even if the decree should be affirmed."
The plaintiffs, therefore, prayed for an order that the
plaintiff's solicitor may proceed and have their costs taxed,
and that the plaintiffs may have execution for the sum de-
creed, &c. unless the defendant shall within a reasonable
time, to be given for that purpose, not exceeding 20 days
bring the principal, interest, and costs, into court to abide
the event of the appeal, or give security, to be approved
of by a master, to pay the amount of the decree, and costs,
on affirmance, or such part thereof as shall be payable on
affirmance,&c. The petition was sworn to by one of the
plaintiffs.

*Henry*, for the plaintiffs, now moved for an order pur-
suant to the prayer of the petition; and in support of this
motion, he relied on the case of *Messionier* v. *Kauman*,* * *Ante* p. 66.
and on the facts stated in the petition.

*Van Vechten* and *Pendleton*, for the defendant, read the
affidavit of the defendant, as to the merits of the decree;
and they opposed the motion on three grounds : 1. That
the appeal suspended all the powers of the court in re-
gard to the cause, so that it had no jurisdiction to proceed
in it, or to award execution, after the filing of an ap-
peal.
2. That the decree was founded in a mistake as to the
amount of the sum due.
2. That the special circumstances of the case showed,
that there was no equity in the application, or necessity
for it, even if the matter rested in discretion.

THE CHANCELLOR. The first point has been repeatedly
decided in favour of the power of this court; and for this
purpose, I refer to the case of *Eden* v. *Winter*, decided in
1814, (1 *Johns. Ch. Rep.* 77.) to *Bradwell* v. *Weeks*,

1817.

RIGGS
v.
MURRAY.

1817.

RIGGS
v.
MURRAY.

* *Ante* p. 66.
† *Ante* p. 120.

decided in the same year, (1 *Johns. Ch. Rep.* 325.) and to the cases of *Messionier* v. *Kauman,** and *Barrow and others* v. *Rhinelander,*† decided in *October* and *November* last. I cannot open the point again without destroying all confidence in the uniformity and stability of the principles and practice of the court; and I shall think it my indispensable duty to continue to exercise the authority I have so repeatedly declared, whenever the occasion shall appear to render it just and expedient, until I am admonished of my error, or directed otherwise by a more competent power. The opinion which I have formed, upon the most mature deliberation, is, that it rests in the discretion of the court, to determine when, and to what extent, the mere fact of filing an appeal shall be a *supersedeas* to all further proceedings. In a variety of cases which may occur, it will be found essential to the security of private right, that this court should possess authority to proceed, notwithstanding the appeal. Some of the reasons pressing upon the justice of the court, are mentioned in the several cases to which I have referred, and they might easily be enlarged. This power exists to the fullest extent in the *English* Court of Chancery, and I have never been able to discover any thing in the constitution, or law of the land, that has abridged in this respect, the powers of this court. Its origin is as pure, its trusts as sacred, and its ends as beneficial, as those on the model of which it was formed. Why then, in matters of private right, should it have a diminished jurisdicton? The power in question is no impediment to the right of appeal. It was never so intended. It does not obstruct the exercise of that right, in the remotest degree. Its operation is only to prevent those abuses and frauds which might be committed under the mask of an appeal, to the infinite discredit of the administration of justice. The party can prosecute his appeal with equal facility, though it be not allowed to work a *supersedeas*, as to every

particular in the given case. If he succeeds on the appeal, he will, of course, annul what has been done in the mean time, and be reinstated in all his rights.

The court exercises it discretion, so far only as to prevent impending injury, or actual abuse, by the intermediate delay. It permits no proceeding after an appeal, except in special cases founded on the reason and necessity of the thing. Thus, in the case of *Green* v. *Winter,* already referred to, (in which the learned counsel who now contends that I have no such power, then strenuously contended that I had,) I refused to permit the master to proceed to take an account under a decretal order appealed from, because I saw no necessity for taking such a step. On the other hand, in the case of *Barrow* v. *Rhinelander,** the parties had proceeded, for a long time, under the order of reference, and had brought the laborious investigation almost to a conclusion, when the defendant most vexatiously interposed an appeal. I did not interfere with his appeal, but I directed the reference to be completed. That case very strikingly illustrates the utility and necessity of the discretion which is claimed. The appeal was there avowedly for delay, and it would be degrading to the character and justice of the country, if a party could at any time, by his mere *veto,* (for the appeal is only filing a formal notice in the register's office,) suspend all the functions of this court, in the given case. If the court has no discretion, and no power, after the appeal is filed, a party might safely inform the court, at once, that he appeals for delay, and that he intends to exhaust his adversary, or to depart with his property, before the appeal can be dismissed. The courts of law have declared that they have a discretion on the subject, and although a writ of error cannot be brought until final judgment, which is a lien on the land, and although the defendant is held to bail at law, yet if it appear by the party's confession, or

*Ante* p. 120.

otherwise, that the writ of error is for delay, the judges have declared that they would not stay execution.

The second point is equally untenable, for upon this application, the decree must be assumed to be correct. If there has been a mistake in the sum taken from the master's report, (which cannot be conceded,) the proper remedy was by application for a rehearing. The merits of the decree cannot now be opened or discussed.

The third ground is the only one to be considered.

There is no immediate danger of loss from delay, but it is apprehended that in the course of a year or more, there may and will be an occurrence of circumstances by which the sum decreed, or the greater part of it, will be lost. If I am to be governed by those circumstances, they ought to have been fully stated; but without them, I can readily believe that a large debt, left for a long time in adverse hands, without any real or personal security, may become endangered by the ordinary vicissitudes of business and the casualties of time. I presume that there are not many cases of a decree for the payment of money, in which the bringing of the money into court, or security for the payment of it, has not been made a condition of granting an application to stay proceedings pending an appeal.

Decrees are often complex and multifarious in their provisions. In a great variety of them, no such payment or security could or would be required, and the proceedings would stay, as of course. This may be a reason why the statute has not made any general provision for security on filing appeals from final decrees, as it has on error from judgments at law.

There is much difficulty in undertaking to inquire into the pecuniary circumstances of a party, in order to determine how far danger may exist. There is no certain rule for the discretion. In the case of a bill of review, it was provided by a rule, as early as Lord *Bacon's* time, that if the decree was for the payment of money, the money must be

paid, before the bill of review could be admitted. This is a rule of the court which has not been departed from, unless it be to substitute security for the money, instead of the money itself. (*Savil* v. *Davey*, 1 *Ch. Cas.* 42. *Crew* v. *Liddel*, 2 *Bro. P. C.* 24. note.) The rule there is general, and applies to every decree for the payment of money. Perhaps, the rule here ought to be pretty uniform, and not leave the discretion too much open and arbitrary in each case. This is a decree, simply and absolutely, for the payment of money; it comes completely within the principle declared in *Messonier* v. *Kauman*, and the party swears to the apprehension of danger.

But the necessity of immediate security is certainly not pressing, and the plaintiffs have conducted themselves with a remissness in the prosecution of the suit that showed their confidence in the pecuniary stability of the defendant. I shall, therefore, give to the defendant all the indulgence, as to time, that his council has requested; and I am the more readily induced to do this, as he may wish to have an opportunity to take the opinion of the court of appeals on this very point; and I shall, intentionally, afford him that facility, by extending the time to the 1st of *March*.

It is, accordingly, ordered, that the solicitor of the plaintiffs be at liberty, at any time, notwithstanding the appeal, to have the costs of the suit taxed aginst the defendant. And it is further ordered, that the plaintiffs be at liberty to issue execution for the 81,836 dollars, 97 cents, with interest thereon from the first day of *July*, 1816, and costs to be taxed against the defendant, according to the course and practice of the court, unless the said defendant shall, on or before the 1st day of *March* next, at his election, either bring the said principal, interest, and costs into court, and deposit the same with the register, or assistant register, to abide the event of the said appeal, and the further order of this court, or give real or personal

1817.

RIGGS
v.
MURRAY.

security, to the amount of the said principal and interest, to be approved of by *Thomas Bolton*, one of the masters of this court, to pay the said principal, interest, and costs, on the affirmance of the decree, or such part thereof as shall be payable according to the decree on the appeal; and in case execution shall issue as aforesaid, the officer be directed to bring into court, and deposit with the register, or assistant register, the moneys that may be collected thereon; and the register, or assistant register, is directed, in case the moneys be deposited, either by the party or by the officer as aforesaid, to place the same at interest, by vesting it in government stock, for the benefit of whom it may eventually concern.

Order accordingly.

N. B. There was an appeal from this order, to the Court of Errors; and after the Chancellor had assigned his reasons to the Court of Errors, for the order, the point was argued in connection with the merits of the cause upon the other appeal, but the Court of Errors gave no opinion on the appeal from this order. Pending the argument on the other appeal, the counsel for the appellant applied *to the Chancellor* to enlarge the time for giving the security under this order, and he accordingly enlarged it to the 1st of *May;* and, in the mean time, the decree on the merits was reversed. The power of the court as declared in the above case, therefore, remains unshaken; and it is understood, that the Judges of the Supreme Court, as far as they had considered the question, concurred in opinion with the Chancellor on this point.