JAMES E. MCDANIEL, ARTHUR W. HAMBY, THEODOTUS C. HAMBY, THOMAS W. WATERS, and CHARLES M. GALLOWAY,

*vs.*

FRANKLIN RAILWAY SUPPLY COMPANY, a Delaware Corporation.

*New Castle, Jan. 30, 1935.*

Clarence A. Southerland, of the firm of Ward & Gray (*Selden Bacon,* of New York City, and *L. L. Hamby,* of Washington, D. C., of counsel), for complainants and cross-defendants.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, and *Francis deH. Janvier (Thomas G. Haight,* of Jersey City, N. J., and *M. S. Hottenstein,* of New York City, of counsel), for defendant and cross-complainant.

THE CHANCELLOR: The defendant's application for approval of a supersedeas bond is predicated on the assumption that the bond when approved will serve to stay all further proceedings pending the appeal. The complainants, being informed of the application, appeared and were heard in reference thereto. They raised three contentions. These are: (a) That an appeal does not as a matter of right operate to stay the operation of an interlocutory decree for an accounting, the question of a stay in such case being one that lies within the discretion of the Chancellor; (b) that the facts of this case are such that a stay should not in the exercise of discretion be granted; and (c) that if the Chancellor were moved in the exercise of his discretion to grant a stay, the amount of the tendered bond is wholly insufficient in that it falls far short of protecting the sum ultimately recoverable by the complainants on the accounting.

1. Is a defendant who lodges an appeal from an interlocutory decree to account entitled as a matter of right to a stay of proceedings upon the giving of an approved supersedeas bond?

The *Constitution* of this State in *Article 4,* § 27, provides as follows:

"Whenever a person, not being an executor or administrator, appeals from a decree of the Chancellor, or applies for a writ of

error, such appeal or writ shall be no stay of proceedings in Chancery, or the court to which the writ issues, unless the appellant or plaintiff in error shall give sufficient security, to be approved respectively by the Chancellor, or by a judge of the court from which the writ issues, that the appellant or plaintiff in error shall prosecute respectively his appeal or writ to effect, and pay the condemnation money and all costs, or otherwise abide the decree in appeal or the judgment in error, if he fail to make his plea good."

Except for an immaterial textual variation, this provision has been a part of our fundamental law since the adoption of the Constitution of 1792.

It is to be observed that the phraseology of the section is not in the terms of a creative grant of a right of appeal and an affirmative declaration of the consequence flowing from its exercise. The section assumes the existence of the right and declares that its exercise shall in no case have the effect of a stay unless a bond is given as specified. The extent of the significance of this manner of expression is this: that stays on appeal are recognized as existent, but that none should operate except bond be given as required. The section thus puts a limitation upon the operation of stays in appeal cases. It leaves untouched the question of when and under what conditions the stays, which are impliedly recognized as present in procedural law, are operative.

The section in question therefore is to be interpreted in the light of its setting of legal background. It was so decided by the Superior Court of this State in *Pettyjohn v. Bloxom,* 1 *Houst.* 594, 597.

What then is the background of this section in the light of which it is to be interpreted? Specifically, was an appeal in a Chancery case regarded by the framers of the constitution as an *ipso facto* arrester of all proceedings in the court below? Or was an order either of the Chancellor or the appellate tribunal a necessary prerequisite to the operation of the stay? The language of the section in question is consistent with either view. If the appeal suspended

the proceedings as a matter of right, as the defendant contends, then as soon as the constitutional bond is given and the brakes are, so to speak, thereby released, the staying appeal would move on through its course of suspensive effect. In that view of the matter, the defendant in this case, upon giving the bond with approved surety, would be entitled as of course to enjoy the benefit of the stay which the appeal affords.

But if an appeal needed to be supplemented by an order before its effect as a stay could arise, then it is apparent that if no stay order had been entered, there would be no stay in operation and consequently no occasion for the giving of the bond. The bond is exacted only as a condition for the stay's operation. In that view, the complainants are correct in saying that until the Supreme Court or the Chancellor has indicated a purpose to order a stay because of the appeal, it is entirely beside the point to talk about the giving of a bond as a condition precedent to its operation.

*Section* 27 of *Article* 4 of the *Constitution* is to be interpreted in the light of the answer to the fundamental question which the foregoing raises, viz., what was the effect, when the constitution was adopted, of an appeal in Chancery cases upon further proceedings in the Court of Chancery pending appeal? The exaction by the section of the bond as the condition of a stay, leaves the power of the court with reference to the stay, whatever it was, unimpaired. *Messonier v. Kauman,* 3 *Johns. Ch.* 66.

There appears to have been some confusion in England prior to our separation from the British Crown, touching the effect of an appeal from Chancery as a stay of the proceedings in the lower court. As early as 1697 it appears from the report of the case of *Horner v. Repham,* 1 *Colle* 1, 1 *Eng. Reprint* 150, which was an appeal to the House of Lords, that pending the appeal, the accounting decreed by the Court of Chancery was proceeded with before the mas-

ter.  Here then was a very early case in which an appeal had no effect as staying the proceedings below; and no expression of disapproval by the Lords is found in the report of the case of the action of the Court of Chancery in proceeding with the accounting notwithstanding the pendency of the appeal.

One hundred and ten years later (1807) we find (15 *Ves., Jr.,* 184, 33 *Eng. Reprint* 723) the House of Lords approving the report of Lord Walsingham that "according to the very ancient practice in this House, appeals to this house were considered by the House as staying proceedings in the Courts of Equity  *  *.  *   (and) that for a very long course of years past the Courts of Equity have *never* forborne to proceed notwithstanding appeals against their orders, decrees or judgments; and with knowledge, that such appeals had been lodged in this House; except in cases, in which their judicial discretion has induced them upon the application of parties interested to stay or modify such proceedings on account of such appeals; and that such *habitual* practice of the courts of equity hath frequently and repeatedly fallen within the knowledge and under the observation of this House; whilst the appeals were depending therein.  The committee therefore conceive, that according to the present practice of this House, appeals do *not* stay proceedings in such courts in the causes, in which appeals are made; and that such causes may be proceeded on in the Courts of Equity; unless such courts should make order thereon to the contrary in causes, in which they may be applied to for that purpose; or unless in special cases this House should interpose by special order; and the committee, attending to the nature of proceedings in Courts of Equity, and the numerous appeals which in each case may be lodged in this House against the orders and decrees of the court, and the effect, which the suspension by appeals of their proceedings must have, are of opinion that the practice *as now* understood, cannot be departed from with-

out introducing consequences the most oppressive to the suitors in Courts of Equity, and the utmost inconveniences in the administration of justice in such courts." (Italics supplied.)

By 1807, therefore, it unmistakably appears that the House of Lords of England approved and endorsed the practice of the equity courts which had "never" been varied and which was "habitual" with them, to disallow to an appeal the effect of a stay except upon special order. It is quite true that the report also states that the House of Lords had, contrary to the practice of the equity courts, considered an appeal as a stay of proceedings. In the interval between 1697 and 1807 when the report of Lord Walsingham was submitted and approved, the House of Lords was well aware, as the report discloses, that the practice in Chancery had been uniformly against regarding an appeal as a stay in the absence of a special order; and no case is to be found reported where the House of Lords in the exercise of its final jurisdiction declared the practice to be erroneous.

The state of this matter in English law prior to our separation from Great Britain is, therefore, that while the House of Lords under its ancient practice considered appeals to operate as stays, yet they had never adjudicated to that effect; and Chancery had so consistently acted to the contrary that by 1807 its practice in that particular had been of such long standing as to be "habitual." It had "never" departed from it.

In this country Chancellor Kent had occasion to consider the effect of an appeal as a stay in equity causes. *Green v. Winter*, 1 *Johns. Ch.* 77; *Bradwell v. Weeks*, 1 *Johns. Ch.* 325; *Messonier v. Kauman*, 3 *Johns. Ch.* 66; *Riggs v. Murray*, 3 *Johns. Ch.* 160. He held in *Green v. Winter*, that the substance of the English Chancery rule obtained in New York. The only difference, he said, between the English practice and the practice in New York

was this, that by the English practice the appellant must apply for an order to stay the proceedings, whereas in the New York Court of Chancery the respondent must apply for leave to proceed. Under the one practice as well as the other, a stay upon appeal was not afforded as a matter of right.

In view of the foregoing I question the basis for the statement of Chancellor Walworth of New York in the case of *Hart & Hoyt v. Mayor, etc., of Albany,* 3 *Paige,* 381, when he said that in England "it became the law of the Appellate Court, that the mere presenting an appeal to the House of Lords, suspended all proceedings whatever in the court below." *Tatem v. Gilpin,* 1 *Del. Ch.* 13, is cited as authority for the proposition that an appeal operates as a stay. In that case, the Chancellor had issued a preliminary injunction and an appeal was taken against his order. Pending the appeal the complainant moved for an attachment for contempt, charging the defendant with having violated the terms of the injunction. The injunction, though ordered, had not yet issued. But that circumstance in itself was of no consequence, if the defendant had knowledge of the fact of the order. 32 *C. J.* 487, 488. The Chancellor denied the motion for an attachment, taking the view that, as an appeal had been allowed, he could not proceed in the cause in any manner until it returned from the High Court of Errors and Appeals. He expressed his opinion without citing authority in its support and without, as the reported argument shows, the benefit of debate at the bar. The decision by the Chancellor upon the question before him runs counter to all the authorities. With all deference, I am compelled to express my disagreement with it.

If the broad principle which underlies the decision in *Tatem v. Gilpin, supra,* were to prevail it would result, quoting the language of the report adopted by the House of Lords before cited, in "introducing consequences the most oppressive to the suitors in courts of equity, and the utmost

inconvenience in the administration of justice in such courts."

The defendant cites two cases to the effect that the taking of an appeal automatically suspends the proceedings in the court below. These cases are *Heyman v. Heyman,* 117 *Ill. App.* 542, and *Petrie v. Dickerman,* 98 *Mich.* 130, 56 *N. W.* 1108. Those cases however were governed by statutory law.

My conclusion under this head of the case is that an appeal did not in English Chancery practice *ipso facto* have the effect of a stay of proceedings. Stays were operative only upon special order either of the appellate tribunal or of the Chancellor. The forms of relief in equity are so diversified and their effectiveness as a means of justice so dependent on the exigencies of peculiar situations, that the question of their temporary suspension pending appeal should be assigned for determination to judicial discretion and not left to be determined by the election of a defeated litigant to docket an appeal. *Section* 27, *Art.* 4 of our *Constitution* is to be read in the light of this principle of procedure. All that it means with respect to appeals in equity causes is, that notwithstanding an order should be entered granting a stay pending appeal, the same should not be operative unless a bond with sufficcient surety be given.

2. The next question is—Should a stay be granted? The defendant has moved for a stay. The complainants contend that when the appeal is from an interlocutory decree to account, the practice uniformly is to deny a stay and to allow the accounting to proceed. In *Nerot v. Burnand,* 2 *Russ.* 56, 38 *Eng. Reprint* 257, Lord Eldon said—"Generally speaking, the court never stays the account." In *Burdick v. Garrick, L. R.* 5 *Ch. App. Cas.* 453, a motion to stay the accounting pending the appeal was denied. *Daniel* in his work on *Chancery Practice, Volume* 2, *p.* 1470, states that "it is not the habit of the court to suspend the taking of an account." In this country Vice-Chancellor Van Fleet, in

*Ratzer v. Ratzer,* 29 *N. J. Eq.* 162, observed that "the rule seems to be definitely settled that an account will not be stayed pending an appeal."

But the rule that an accounting will not be suspended pending an appeal has not been universally adopted in this country. Chancellor Kent did not follow it in *Green v. Winter,* 1 *Johns. Ch.* 77; and in *Messònier v. Kauman,* 3 *Johns. Ch.* 66, while he directed the accounting to proceed, it was because as a matter of wise discretion he thought it should. It was not because a rigid rule demanded it. It is to be noted that Lord Eldon in saying that the court never stays the account, qualified his statement by the phrase "generally speaking," and Mr. Daniel speaks only of the "habit" of the court, not of its rule as an inflexible one. Whether the accounting should proceed pending appeal should be determined in the light of the circumstances of each case. In one case it might well be allowed to proceed; in another, to allow it to do so may prove vexatious and burdensome. The question of whether the stay should be granted in accounting cases, should be referred to the sound judicial discretion.

In the instant case the appeal calls before the Supreme Court for review the principles upon which the account is to be taken. If the accounting should proceed, the prospect is that considerable testimony may be taken, and a rather extensive record compiled. Should the Supreme Court reverse the decree and define the principles of the accounting in accordance with the appellant's theories, much if not all of the labor expended in the interval will come to naught and a great deal of expense will have been incurred for nothing. When such is the case and no special requirement of justice exists suggesting a contrary course, Chancellor Kent in *Green v. Winter, supra,* and the Supreme Court of New York in *Coleman v. Phelps,* 24 *Hun.* 320, considered it a wise exercise of discretion to order a stay of the accounting proceedings until the controverted principles upon

which the accounts were to be settled had been determined by the appellate court. In the event of some modifications of the principles of the accounting by the Supreme Court, it might be a matter of considerable difficulty in this case to segregate from the evidence and items which the master may have received as relevant under the present decree, that portion of it which would be pertinent under a re-formed decree. These considerations, together with the further one that no unusual circumstance beyond that of mere delay is·present in the case, induce me to conclude that the proceedings before the master should be stayed pending the disposition by the Supreme Court of the appeal. An order will be entered directing the master to suspend the taking of the account.

3. The defendant tenders a supersedeas bond in the sum of fifteen thousand dollars. The complainants object that the bond is wholly inadequate. They insist that the bond should be sufficient to cover the minimum at least of their reasonably possible recovery, and that they say is three hundred thousand dollars. In *Barrow v. Rhinelander,* 3 *Johns. Ch.* 120, Chancellor Kent refused to fix the amount of security to be given by the defendant in the amount which it was claimed might be found to be due from him on an accounting, because, he said, until the master's report has been received and confirmed, he had nothing by which to guide his judgment. In this case, there has been no ascertainment of an amount due from the defendant to the complainants. The purpose of the reference is to enable the court to ascertain the sum if any. All that has been thus far adjudicated is the duty of the defendant to account. I do not feel I should undertake a forecast of the minimum which the complainants may be able to establish as recoverable by them and exact a security from the defendant for that amount as a condition for the granting of the stay. A bond in the amount tendered will therefore be approved subject to the sufficiency of the surety.