EUGENE D. POWERS v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Corporation of the State of Maryland.

(*March* 6, 1945.)

LAYTON, C. J., RODNEY and TERRY, J. J., sitting.

*Clarence A. Southerland* and *William Poole* (of Southerland, Berl and Potter) for plaintiff.

*Isaac D. Short, 2d,* for defendant.

Superior Court for New Castle County, No. 18, May Term, 1944.

RODNEY, J., delivering the opinion of the Court:

This case solely involves the propriety of a suit in a court of law on an injunction bond given in a proceeding in equity where a preliminary injunction has been dissolved

and bill dismissed, and where such suit at law was instituted during appellate proceedings attacking the validity of such dissolution and denial of the injunction.

Because, however, the matter here involved and the argument of counsel, in some degree, have relation to the general principles controlling the question as to the operation of appellate proceedings as a supersedeas, with or without the entry of security, such question may be briefly considered.

■ The very term "supersedeas" itself has undergone great change. Originally it was a distinctive writ directed to a ministerial officer commanding him to suspend action pending appellate proceedings. The term is now largely used to designate the effect of the appellate proceedings themselves.

■ ■ It seems to be entirely clear that at common law a writ of error in an action at law operated as a supersedeas or stay of proceedings in the Court below. This resulted in great abuse and in the denial of the plaintiff's ultimate recovery. By several early English statutes it was enacted that in certain stipulated actions unless security or bail was given the writ of error did not operate as a supersedeas or stay of the proceedings on the judgment in the Court below. Those statutes known as 31 *Elizabeth c* 3 *Sec. 3, 3 JacIc* 8 and 18 *Car* IIc2 are set out in 2 *Sellons Pr.* 365 and 2 *Tidd's Pr* 1149 and the procedure under them is made clear. The Acts generally had application only to judgments of certain characteristics and they culminated in 19 *Geo III c* 70 (1779) 4 *Halsbury Stat. of England* p 10, wherein it was provided that no execution should be stayed by a writ or error on any judgement of over ten pounds unless bail in error or a recognizance was entered with two sureties.

In most jurisdictions the matter is regulated by statute, but in Delaware, *Art.* IV, *Sec.* 27 of the Constitution of 1897, it is provided:

"Whenever a person, not being an executor or administrator, appeals from a decree of the Chancellor, or applies for a writ of error, such appeal or writ shall be no stay of proceedings in chancery, or the court to which the writ issues, unless the appellant or plaintiff in error shall give sufficient security, to be approved respectively by the Chancellor, or by a judge of the court from which the writ issues, that the appellant or plaintiff in error shall prosecute respectively his appeal or writ to effect, and pay the condemnation money and all costs, or otherwise abide the decree in appeal or the judgment in error if he fails to make his plea good."

The foregoing provision had its origin in the *Constitution* of 1792 where, with very slight variation, it appeared as *Art.* 6, *Sec.* 12. In *Pettyjohn v. Bloxom,* 6 *Del.* (1 *Houst.*) 594, the Court, after reciting the effect of a writ of error as a supersedeas at common law and the effect of the English statutes, stated that the effect of our constitutional provision was to change the common law as it had been changed in England by statute. The Court then said:

"The meaning and effect, therefore, of this provision of our State constitution is, that when sufficient security is given for the prosecution of it, a writ of error shall be a supersedeas of all proceedings on the judgment in the Court below."

See also *State v. McCoy,* 16 *Del.* (2 *Marv.*) 465, at page 540, 36 A. 355.

It will thus be seen that, in Delaware, appellate proceedings do not, ordinarily, operate as a stay or supersedeas unless security is given.

At common law the effect of appellate proceedings as a supersedeas seems to have differed, depending whether such proceedings were by Writ of Error to a court of law or appeal in Equity proceedings. It is unnecessary to consider whether this distinction may have been due, in part, to the difference in the nature of the appellate proceedings. In 2 *Daniels Chancery Pr.* (1st Ed.) 575, it is pointed out that jurisdiction in Writs of Error originally resulted from the record, itself, of the court below being brought by the Writ of Error to the House of Lords for correction, and thus no record remained in the lower court, while in an appeal in Chancery such appeal was commenced by a mere petition reciting the proceedings below, and that it was on this petition and subsequent pleadings, and not on the record below, that the appeal was heard. At a somewhat early period the English House of Lords considered that by an appeal further proceedings were stayed in the court below, but this seems never to have been adopted in practice, and the matter was set at rest in 1807 by resolution of the House of Lords, in 15 *Ves. Jr.* 184, 33 *Eng. Reprint* 723. There it was determined that appeals in Equity do not stay proceedings in the court below unless such court or the Appellate Court should expressly order that the appeal should have such effect. Chancellor Wolcott considered the matter in *McDaniel v. Franklin Ry. Supply Co.,* 20 *Del. Ch.* 354, 177 A. 544, 547, where he said:

"The forms of relief in equity are so diversified and their effectiveness as a means of justice so dependent on the exigencies of peculiar situations, that the question of their temporary suspension pending appeal should be assigned for determination to judicial discretion and not left to be determined by the election of a defeated litigant to docket an appeal. *Section* 27, *art.* 4 of our Constitution is to be read in the light of this principle of procedure. All that it means with respect to appeals in equity causes is, that notwithstanding an order should be entered granting a stay

pending appeal, the same should not be operative unless a bond with sufficient surety be given."

It will thus be seen that, under our decisions, appellate proceedings, whether by appeal or Writ of Error, do not operate as a supersedeas or stay of proceeding in the court below unless security be given to prosecute the appeal with effect and pay the condemnation money if he fail to make his plea good. It will also be seen that in proceedings at law the Writ of Error does act as a supersedeas where proper security has been given; that in appeals in Equity, owing to the peculiar nature of equitable relief, the taking of the appeal does not operate as a supersedeas or stay without an independent order of the Chancellor or Supreme Court to that effect, nor does such order of the Chancellor or Supreme Court operate as a stay without the giving of the bond, pursuant to the Constitutional provision.

The present case, as hereinabove stated, was brought upon an injunction bond to recover the damages allegedly sustained by the present plaintiff by reason of the original granting of a preliminary injunction. The preliminary injunction was not made permanent, but was dissolved by the Chancellor. From this decision to dissolve the injunction an appeal was taken, and is now pending. No order of the Chancellor was obtained, providing for a stay of proceedings pending the appeal, and no bond in the nature of a supersedeas was given by the appellant.

It is clearly and concededly the law of Delaware that an appeal from a decree dissolving an injunction does not operate to reinstate or continue the injunction unless a special order to that effect is made by the Chancellor or by the Supreme Court. *Cutrona v. Mayor and Council of Wilmington*, 14 *Del. Ch.* 262, 125 A. 417. This principle is likewise preserved in Rule 60 of the Delaware Supreme Court, which provides, in part,

"No appeal taken from an order or decree refusing or dissolving an injunction shall have the effect of granting or continuing in force an injunction unless the Chancellor, pursuant to the application of the appellant, shall have so ordered. In case the Chancellor shall have refused such an application the Supreme Court or any three judges thereof may, for good cause shown, direct the grant or continuance of such injunction in whole or in part and prescribe the terms and conditions thereof."

It will be seen from the foregoing facts that no injunction now limits, nor has limited, since the dissolution of the injunction in March, 1942, any action of the present plaintiff in regard to the stock covered by the original injunction. No order continuing the injunction having been obtained and no bond given, no injunction was continued, and the present plaintiff was at liberty, after 1942, to do with the stock as he pleased. The validity of the original injunction and the correctness of the conclusion that the injunction should have been dissolved, is directly attacked, and is now pending in the Supreme Court. This present proceeding seeks to ascertain the amount of damages sustained by the issuance of the original injunction, and the collection of such damages from the present defendant.

Looking through the facts of the present case, it is difficult to see that any question of supersedeas is at all involved, or that there is any particular pertinency as to the effect of an appeal upon the dissolution of the injunction. No present supersedeas is here claimed and no existing injunction is contended for. The sole question is the right to assess and collect damages for the allegedly improper issuance of an injunction, where the legality of such injunction is still pending on appeal.

The present matter is very similar to *Cohn v. Lehman,* 93 *Mo.* 574, 6 *S. W.* 267, 271. In that case an injunction had been issued and an injunction bond executed. There, as

here, the preliminary injunction was dissolved and not made permanent. There, as here, the dissolution of the injunction was followed by appellate proceedings, and during their pendency a suit was brought in another court on the injunction bond. The court said that by the appeal "* * * such decree, as well as the whole cause, was removed to the supreme court for review and its operation, as a final decree was suspended, and so remained suspended at the time of the institution of this suit; and by the action of the supreme court, whenever action shall be taken on such appeal, the decree of such district court may be reversed, the plaintiff's bill be reinstated, the order dissolving the injunction set aside, and a perpetual injunction granted, and a breach of the condition of the bond become impossible. If, therefore, a valid appeal had been taken to the supreme court of the United States in said equity suit, and such appeal was pending in said court at the time this suit was instituted, plaintiff had no cause of action on the bond. * * *"

In the case just cited it was contended that the appeal did not act as a supersedeas because no proper bond had been given. This was conceded, but the Court said:

" * * * We do not see, however, how this affects the question at issue. The statutory supersedeas operated only on the process of the court; it stays execution, and that is its only office. In all other respects, the appeal is as operative without as with a supersedeas. Rights which do not depend upon the execution of the decree, but which depend alone upon the final determination of the issues in the suit, are left in the same condition by an appeal without as with a supersedeas, and, as we have seen the right of the plaintiff to sue in this case is dependent upon the final determination of the suit in which the bond was given. That right is as well suspended by an appeal without supersedeas as it would have been by an appeal with supersedeas. Whether he will ever have a right of action on the bond yet remains to be de-

termined by an event which has not yet happened; that is, the nature of the judgment that will be rendered by the supreme court of the United States in the suit in which said bond was given, and which is pending in said court."

To the same effect are *Yazoo & M. V. R. Co. v. Adams,* 78 *Miss.* 977, 30 *So.* 44; *Tutty v. Ryan,* 13 *Wyo.* 134, 78 P. 657, 79 P. 920.

In some states, such as North Carolina, damages sustained by a wrongful injunction and covered by an injunction bond may (or could) be assessed in the injunction case itself without recourse to a separate action at law on the bond. *Crawford v. Pearson,* 116 *N. C.* 718, 21 *S. E.* 561. In such cases where an injunction has been dissolved and an appeal taken from such decision, the assessment of damages was held improper until the determination of the appeal. *Raleigh & W. Ry. Co. v. Glendon & G. M. & M. Co.,* 117 *N. C.* 191, 23 *S. E.* 181.

The only two cases directly sustaining the position of the plaintiff-demurrant were decided by a single judge in Alaska (*Howard v. Lindeberg,* 2 *Alaska* 301, and *Elliott v. Kuzek,* 2 *Alaska* 587) and the cases therein cited scarcely sustain the conclusions. Chief reliance was placed upon a quotation from *High on Injunction* (1st Ed.), *Sec.* 956, as follows:

"Upon the dissolution of an injunction and failure on the part of the obligors to comply with the conditions of the bond, a right of action at once accrues."

The same statement is made in 2 *High on Injunction* (4th Ed.), *Sec.* 1649, but it is quite obvious that the author was not either considering appellate proceedings or the law in jurisdictions where suit on the bond must await final decree in the case in which the preliminary injunction had been granted. Every case cited to sustain the action is based

upon the fact that suit on the bond need not await a final decree in the case. *Dougherty v. Dore*, 63 *Cal.* 170. On the contrary, as said in 1 *Spelling on Injunction* (2d Ed.), *Sec.* 957:

"As a general and practically universal rule an action cannot be maintained on an injunction bond until after the final termination of the suit in which the bond was given."

See also 14 *R. C. L.*, p. 474, and cases collected in *Shackleford v. Bennett*, 237 *Ill.* 523, 86 *N. E.* 1073, 15 *Ann. Cas.* 721.

That the quoted statement from *High on Injunction* did not relate to appellate proceedings may be seen from the fact that in the same section (1649), it is said:

"Where an appeal is taken from a judgment dissolving a temporary injunction, which is thereupon affirmed, damages are properly assessable upon the final determination of the appeal and not at the time of the rendition of the judgment of dissolution."

And also:

"Although the suit has been dismissed in the Court below, no action can be maintained upon the bond while an appeal remains pending and undetermined from such decree."

In 1 *Spelling on Injunction* (2d Ed.), *Sec.* 958, it is said:

"The right to enforce an injunction bond is suspended during appeal and as the right to enforce it depends upon the final determination of the suit in which it was given it is immaterial whether supersedeas was obtained or not."

The only other case cited as directly sustaining the view of the demurrant is *Alexander v. Gish*, 88 *Ky.* 13, 9 *S. W.* 801. That case and especially in its later phase, reported in 17 *S. W.* 287, 13 *Ky. Law Rep.* 515, clearly illustrates the

impropriety of a suit for damages on an injunction bond brought upon the dissolution of an injunction, and while appellate proceedings concerning such dissolution were still pending.

In *Alexander v. Gish* an injunction was issued in Kentucky and bond given. The action was then removed to the U. S. Circuit Court, which subsequently dissolved the injunction, and an appeal from this dissolution decree was taken to the Supreme Court of the United States. After the dissolution of the injunction, and pending the appeal, suit was brought on the injunction bond in a Kentucky court. That court sustained a demurrer in the case, presumably on the ground of the pendency of the appeal concerning the dissolution of the injunction. The Appellate Court in Kentucky reversed this judgment on demurrer, and remanded the case for further proceedings. 9 *S. W.* 801. In the court below a trial was then had on the injunction bond, resulting in a verdict for the defendants. This was again taken to the Appellate Court of Kentucky. Meanwhile, the Supreme Court of the United States reversed the Circuit Court, and held the dissolution of the injunction invalid, as the suit had not been properly removable from the State Court of Kentucky. The Appellate Court of Kentucky was then forced to sustain the judgment before them in favor of the defendants in the suit on the bond, holding that the original plaintiffs had no right to recover until the final determination on appeal of the dissolution of the injunction. These facts appear in 17 *S. W.* 287.

Let us, then, apply the foregoing law to the facts in the present case. In 1941 an injunction was obtained against the present plaintiff and an injunction bond executed by the present defendant, as surety. Since the present plaintiff was prevented by the injunction from disposing of or dealing with his property, what may be called a potential or inchoate claim arose as to any damage that might result.

If the preliminary injunction had been dissolved, but the entire case reserved by the Chancellor until final hearing, then, we take it, no liability on the bond could have been asserted until such final decree. On final hearing on March 23, 1942, the preliminary injunction was dissolved and the bill was dismissed. Within the statutory period an appeal was taken from that decree, and is now pending. This appeal, in the absence of an express order of the Chancellor or of the Supreme Court, and in the absence of a supersedeas bond, did not continue or revive the injunction theretofore existing. After the decree of the Chancellor dissolving the injunction, the defendant therein was at liberty to deal with the property as if no injunction had theretofore existed. Any loss or damage resulting from the original injunction is a matter separate and apart from the execution of the decree or the disposition of the property affected. In *State v. Turner*, 5 *Del.* (5 *Harr.*) 501, the Court, speaking of an appeal without supersedeas, said the Constitution "has reference only to the further proceeding upon the judgement of the court below; and not to the effect of the judgment appealed from."

Loss may have been incurred by the injunction, but whether this loss or damage is assessable against the present defendant depends upon the propriety of the original injunction and the validity of its subsequent dissolution, and the correctness of this action is now pending in the established and proper forum, viz., the Appellate Court.

Until these questions have been determined, and the liability of the present defendant for the damages sustained by the injunction established, there can be no right of action on the bond given to secure such damage.