JACOB BLAUSTEIN v. STANDARD OIL COMPANY, a Corporation of the State of Indiana.

(*November* 1, 1945.)

. RODNEY and SPEAKMAN, J. J., sitting.

*Caleb S. Layton, C. A. Southerland* and *Aaron Finger* for plaintiff.

*Hugh M. Morris, Edwin D. Steel, Jr.,* and *S. Samuel Arsht* for defendant by special appearance.

Superior Court for New Castle County, Foreign attachment-covenant, No. 136, May Term, 1945.

RODNEY, J., delivering the opinion of the Court:

It is apparent that if the order of the Court quashing the writ of foreign attachment and dissolving the attachment made thereunder be entered without some stay of operation, that then the suing out of a writ of error thereafter and in said proceedings might be a vain and useless thing.

If the attachment be dissolved and the writ quashed before the suing out of the writ of error, the conclusion of the Appellate Court on such writ of error might have nothing upon which it could operate and be effective. The authorities are in conflict, but it is unnecessary for us to consider the question. See cases collected in *Annotations in Ann. Cas.* 1913B, 180 and 115 *A. L. R.*, 598; *L. R. A.* 1917B, 591.

Under the circumstances of this case we must briefly consider whether by any ordinary process of appellate proceedings the plaintiff can have his right to the process of foreign attachment in the present case reviewed by an Appellate Court and have any benefit of said process in case of a determination favorable to himself.

No statute in Delaware governs matters of stay or supersedeas connected with appellate proceedings, but the subject matter is one of constitutional provision. Art. IV, Sec. 27, of the Constitution provides: "Section 27. Whenever a person, not being an executor or administrator, appeals from a decree of the Chancellor, or applies for a writ of error, such appeal or writ shall be no stay of proceedings in chancery, or the court to which the writ issues, unless the appellant or plaintiff in error shall give sufficient security, to be approved respectively by the Chancellor, or by a judge of the court from which the writ issues, that the appellant or plaintiff in error shall prosecute respectively his appeal or writ to effect, and pay the condemnation money and all costs, or otherwise abide the decree in appeal or the judgment in error if he fail to make his plea good."

The effect of this provision has been considered a number of times. *Pettyjohn v. Bloxom,* 1 *Houst.* (6 *Del.*) 594; *McDaniel v. Franklin Ry. Supply Co.,* 20 *Del. Ch.* 354, 177 *A.* 544; *Powers v. Fidelity & Deposit Co. of Maryland,* (*Del. Super.*) 41 *A.* 2d 830. The effect of the constitutional provision has been said to be to change in Delaware the common

law effect of a writ of error as a supersedeas in the same manner that such common law effect had been changed in England by statute.

It is obvious that the constitutional provision has no pertinency to the present question. Such provision insures that when proper security is given the writ of error shall be a supersedeas of all proceedings on the judgment below. In the present case there could exist no further proceedings in the Court below, but the judgment or order dissolving the attachment and quashing the writ would be self-operating, leaving nothing on which further proceedings could be had.

Under these circumstances, there being no applicable and pertinent constitutional provision, statute or rule of Court the question is, Does there exist in the trial court an inherent power to grant such a stay of a self-operating order as will entitle a litigant to have the propriety and correctness of such order reviewed?

In *Thompson v. Thompson*, 3 *W. W. Harr.* (33 *Del.*) 593, 140 *A.* 697, 699, it is said: "It seems to be a generally favored policy that a complete and adequate administration of justice requires that a litigant should be entitled to have his rights examined or reviewed in a tribunal superior to that by which he considers himself aggrieved."

In the language of Sec. 4275, *Revised Code* of 1935, it is, and has long been, a specific statutory injunction that the Superior Court shall "generally  *   *   *   minister justice to all persons, and exercise the jurisdiction and powers hereby granted them, concerning the premises, according to law and equity,  *   *   *   to all intents and purposes whatsoever, as heretofore."

The words "as heretofore" were an interpolation originating in the *Revised Code* of 1915. In our opinion these words only indicated that the Court should in the

future have that same power and duty of administering justice to all persons that it had formerly exercised. The statute is a very old one and from the earliest times to the change of language in 1915, the Court, in furtherance of justice, was specifically empowered and enjoined to exercise the same jurisdiction and power "as the Justices of the Kings Bench and Common Pleas at Westminster of the Chancellor of England may or can do."

If the administration of Justice by a Court includes the preservation of a right of review of that same Court's action, then this Court is clothed with all the power and authority ever existing in the Superior Courts of England, including the Chancellor.

We are convinced that in this State an unsuccessful litigant at law seeking review by writ of error has no valid claim, as a matter of right, that such writ of error alone shall operate as a stay or supersedeas.

We are equally convinced, from the many authorities examined by us that there does exist in the inherent power of this Court, and to be called into play by the exercise of a sound legal discretion, a power to grant such a reasonable stay as may be necessary to do exact or substantial justice between the parties. The stay will not be granted when it runs counter to a constitutional provision or statute governing the matter, and the discretion will not be called into play when constitutional, statutory or other provisions adequately provide for the situation. The discretion will only be exercised when, without such exercise, substantial justice will be defeated. Many cases hold this power to exist in the trial Court prior to writ of error, and to exist in the Appellate Court when the proceedings have reached that tribunal. Cases concerning the latter jurisdiction are collected in a Note in 67 *Am. St. Rep.* 714.

We do not propose to enter into any extended discussion of the cases holding that there exists in a Court an inherent right, in the furtherance of justice, to exercise its discretion in granting a stay when, without such stay, justice would be entirely defeated. We have found no case denying such jurisdiction.

In *American Surety Co. v. Marsh,* 146 *Okl.* 261, 293 *P.* 1041, 1044, it is said: "In an unbroken line of decisions this Court has held that, 'in cases where the statute makes no provision for a supersedeas, or stay of the judgment or final order, as a matter of right, the trial court may, in the exercise of its discretion, allow a supersedeas or stay, on such terms as it may prescribe for the protection of the parties, pending an appeal to the appellate court.' "

See also *Home Fire Ins. Co. v. Dutcher,* 48 *Neb.* 755, 67 *N. W.* 766; *Tulare Irr. Dist. v. Superior Court,* 197 *Cal.* 649, 242 *P.* 725; *Aetna Casualty & Surety Co. v. Board of Supervisors,* 160 *Va.* 11, 168 *S. E.* 617, 629.

It is contended that any rule of discretion resting upon a court to grant a stay of its order will not be exercised in a case of a self-operating order or judgment. We appreciate the distinction between a judgment or order upon which some further proceedings are to be had, on the one hand, and, on the other, a self-operating order which is in itself complete, and upon which no further proceedings can be had. We do not say that those general provisions of supersedeas which operate by statute or otherwise to postpone further action on a judgment or order would be sufficient, without express judicial action, to stay the operation of a self-executing judgment or order. We do say that that same inherent power, if it exists, in a Court by special action to stay the operation of a judgment or order, also exists where the order would, in the absence of such special action, be self-operating. The power of the Court is a power to

grant the stay in the furtherance of justice, regardless of the nature of the order stayed.

It is suggested that this Court has held that the attachment in this case was improperly issued and invalid, and has ordered it to be quashed, and that, therefore, the Court is without jurisdiction to continue that thing in force which the Court has found to be unwarranted by our law. This impression of inconsistency is removed when it is considered that it is only by the opinion of the present Court that the attachment proceedings have been judicially considered as unwarranted. The question is novel, and has not heretofore been determined in this State. A proper regard for the rights of the parties requires an opportunity of testing the correctness of the conclusions reached by this Court. The order of the Court will simply stay the effect or operation of the order quashing the writ and dissolving the attachment until the matter can be placed before an appellate tribunal.

We are convinced that without this stay the rights of the plaintiff are seriously prejudiced. We think that he has the right to have adjudicated in the Appellate Court an important and hitherto undetermined question in this State, and that this right should be exercised at a time and under such circumstances that a favorable conclusion for him may still be effective and of value.

We have considered the viewpoint of the defendant and are convinced that its interests are not unduly prejudiced, and, indeed, no such claim is here made. It is true that large number of shares of stock are attached. Both the bond given in the original attachment proceeding and the bond to be given in the appellate proceeding are conditioned for the payment of all costs and damages that may result if the attachment may be held to be unwarranted.

We think the order should be made staying or postponing the effect or operation of the order quashing the writ and dissolving the attachment, until a writ of error can be prosecuted in the Supreme Court. We think this step must be taken within fifteen days, and will so order.